## NATIONAL LABOR RELATIONS BOARD v. PRUDENTIAL INS. CO. OF AMERICA (two cases).

### Nos. 9983, 9984.

Circuit Court of Appeals, Sixth Circuit.

April 1, 1946.

David Findling, of Washington, D. C. (David A. Morse, Malcolm F. Halliday, A. Norman Somers, Joseph B. Robison, and Dominick L. Manoli, all of Washington, D. C., on the brief), for petitioner.

Milo J. Warner, of Toledo, Ohio, and Joseph T. Ferris, of Newark, N. J. (Doyle, Lewis & Warner and Milo J. Warner, all of Toledo, Ohio, and Joseph T. Ferris, of Newark, N. J., on the brief), for respondent.

Before HICKS and ALLEN, Circuit Judges, and MILLER,[1] District Judge.

MILLER, District Judge.

These two proceedings, involving in each case the validity of the action of the Na-tional Labor Relations Board in designating the unit appropriate for the purposes of collective bargaining, arise out of the same series of facts and are considered together. Each case is before the Court upon the petition of the National Labor Relations Board, pursuant to § 10(e) of the National Labor Relations Act, § 160(e) Title 29 U.S.C.A., for enforcement of its order of June 30, 1944 issued against The Prudential Insurance Company of America, respondent, following the usual proceedings pursuant to § 10 of the Act, § 160, Title 29 U.S.C.A.

On July 13, 1942 a labor organization, herein called the AFL Local, filed with the Board for the purpose of collective bargaining and pursuant to § 9 of the Act, § 159, Title 29 U.S.C.A., a petition for investigation and certification of representatives for the industrial insurance agents attached to the three district offices in Toledo, Ohio, and the detached office at Bryan, Ohio, a nearby town, of The Prudential Insurance Company of America, hereinafter called the Company. The Company objected to the proposed unit because it was limited to the agents of the Company at Toledo and Bryan, contending that the appropriate unit for collective bargaining should include all its industrial agents employed within the State of Ohio because of the substantially uniform working conditions of these employees and the difficulties that collective bargaining with the lesser units would entail. On December 26, 1942 the Board issued its Decision and Direction of Election holding that the unit proposed by the AFL Local was the appropriate unit. This ruling was based principally upon the finding that employees in only 6 of the Company's 31 districts in Ohio had been organized and that the city-wide unit rather than the state-wide unit was appropriate because of this limited extent of self-organization among the Company's agents in Ohio. In making this ruling the Board said: "Under all the circumstances of this case we are of the opinion and find that the policies of the Act can best be effectuated by making collective bargaining an immediate possibility for the employees of the Company in the three district offices of Toledo and the sub-district office of Bryan, Ohio. Our finding does not preclude a later finding that a state-wide or larger unit is appropriate for collective bargaining purposes." On February 5th,

---

[1] Then sitting by designation.

following an election, the Board certified the AFL Local as the exclusive bargaining representative of the employees in the designated unit.

On April 20, 1943 the AFL Local requested a conference to negotiate a contract for the employees within the unit referred to. On April 30, 1943 the Company answered by calling attention to the fact that there was then pending before the Board the question of a statewide unit for the Company arising out of a petition filed by a C. I. O. Union, and suggesting that the present request was untimely and bargaining negotiations should be deferred until the decision by the Board on this new petition. However, the AFL Local insisted on the requested conference, and under date of May 25, 1943 the Company advised the Union that it was not inclined to comply with its request.

The pending proceedings referred to by the Company arose out of the filing of the following petitions with the Board: On September 29, 1942 the AFL Union of Canton, Ohio, filed its petition for investigation and certification of representatives. On October 17, 1942 the AFL Union of Akron, Ohio, filed its petition for investigation and certification of representatives. On December 26, 1942 the International Union of Life Insurance Agents (hereinafter called the International) filed the following three petitions: (1) For a unit to cover the agents working out of the district office in Dayton, Ohio, (2) for a unit to cover the agents working out of the district office in Cincinnati, Ohio, and (3) for a unit to cover the agents working out of the district offices in Hamilton, Ohio. On January 16, 1943 the CIO filed a petition for a state-wide unit to include all of the agents in Ohio. On March 22, 1943 the International filed a petition to cover the agents working out of the district office in Springfield, Ohio. On February 4, 1943 the AFL filed a petition for a unit to cover the agents working out of the office in Sandusky, Ohio. On April 23, 1943 the AFL filed a petition for a unit to cover the agents working out of the district office at Mansfield, Ohio. These 9 petitions were consolidated in one case and hearings started therein on April 27, 1943. On June 17, 1943 the Board rendered its Decision and Direction of Election in which it found that all the industrial agents of the Company in Ohio, excluding those agents attached to the three district offices in Toledo and the detached office at Bryan, Ohio, constituted an appropriate unit, and specifically adding "Our finding does not, however, preclude a later finding that a larger unit is appropriate." The Board found as its basis for this ruling that the progress of union organization among the Company's agents in Ohio had been quite rapid in recent months, the evidence disclosing that the unions claimed majorities in all but 3 of the Company's 31 district offices in Ohio, which presented a situation in striking contrast to the one which existed at the time of the hearing in the Toledo case when only 6 of the 31 district offices had been organized, and that outside the State of Ohio collective bargaining on behalf of the Company's agents had developed during 1943 to the point where it was being conducted in bargaining units at least Statewide in scope. It also pointed out that the International, which had originally petitioned for city-wide units, had changed its petition in the hearing, contending for the state-wide unit. The Board then made this statement: "From the aforesaid facts it is clear that the time is ripe for the establishment of a state-wide unit in Ohio. However, inasmuch as we have so recently certified the AFL in the Toledo unit, we shall exclude it from the appropriate unit in the instant proceeding." An election was conducted on July 29, 1943 followed by a runoff election on September 23, 1943 which resulted in the selection of the International as the bargaining agent in the unit designated. On September 29, 1943 the International moved the Board to certify it as the exclusive representative of all the industrial insurance agents of the Company in Ohio, calling attention to the Board's statement in the Toledo case that its finding therein did not preclude a later finding that a state-wide unit was appropriate for collective bargaining purposes. On September 29, 1943 the Company petitioned the Board to amend its Decision and Direction of Election by finding that all the industrial insurance agents of the Company in Ohio constituted the most appropriate unit for collective bargaining, that it revoke its certification in the Toledo case, and that it certify the International as the bargaining representative for all the industrial insurance agents of the Company in Ohio. On November 19, 1943, following an oral hearing on the motions, the Board denied the two motions and certified the International as the bargaining representative for all of the Company's industrial agents

in Ohio excluding the agents attached to the three district offices in Toledo and the detached office in Bryan, Ohio. The Board pointed out that the AFL Local in Toledo had been advised that it could waive its rights under the certification in the Toledo case if it so desired, but that it had notified the Board that it did not desire to do so.

On November 27, 1943 the International requested the Company to meet with the Union for the purpose of negotiating a contract of employment. On December 2, 1943 the Company declined to do so on the ground that the unit found by the Board was inappropriate by reason of the exclusion of the Toledo area.

On June 5, 1943 the AFL Local in the Toledo case filed charges with the Board and the Board issued its complaint alleging that the Company had unlawfully refused to bargain collectively. On December 16, 1943 the International filed charges with the Board and the Board issued its complaint alleging that the Company had unlawfully refused to bargain collectively. In each case the Company admitted its refusal to bargain collectively with the designated agent but justified its action on the grounds that in the Toledo case the Board's finding of the Toledo unit was arbitrary and capricious, was a temporary finding to be effective only until such time as organization of the Company's agents had extended throughout the State, and that on April 20, 1943, when it was asked by the AFL Local to negotiate with it organization of its industrial agents in Ohio had extended throughout the State; and, in the other case, that the Board's finding of the Toledo unit in the Toledo case was only a temporary finding and that the Board's exclusion of the Toledo unit from the otherwise state-wide unit was arbitrary and capricious. In both cases the Company stated that it was and always had been ready and willing to bargain collectively with any representative that might be designated by its industrial agents in the whole State of Ohio. Following a hearing on each complaint the Board handed down a ruling in each case which reaffirmed its findings in the respective cases, and held that on the basis of the Company's admitted refusal to bargain with the certified union it had violated § 8(1) and (5) of the Act, § 158(1) and (5), Title 29 U.S.C.A. On June 30, 1944 it issued its order in each case directing the Company to cease and desist from refusing to bargain collectively with the certified union in the unit held appropriate, and to bargain collectively with said union upon request. Thereafter on March 12, 1945 the Board filed its two petitions herein to enforce the respective orders in the two proceedings.

Under § 9(b) of the National Labor Relations Act, § 159(b), Title 29 U.S.C.A., the Board has the responsibility of determining the appropriate group of employees for the bargaining unit. It is well settled that it has a wide discretion in its selection and its decision is conclusive unless arbitrary or capricious. Pittsburgh Plate Glass Co. v. National Labor Relations Board, 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251; National Labor Relations Board v. Botany Worsted Mills, 3 Cir., 133 F.2d 876, 880. The respondent concedes the rule but insists that the action of the Board in the present cases exceeded the permissible limit.

Although the ruling of the Board determining the appropriate bargaining unit is not subject to direct review under the statute, the ruling can be challenged when a complaint of unfair practices is made based upon that ruling. American Federation of Labor v. National Labor Relations Board, 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347; Pittsburgh Plate Glass Co. v. National Labor Relations Board, supra. The respondent is therefore entitled in the present proceedings to the review which it seeks of the two orders in question.

The selection by the Board in the Toledo case of the Toledo area as the appropriate unit appears well within the discretion vested in the Board. It was based upon the limited extent of organization then existing. It is a recognized principle that at times a small unit, limited to the extent of organization then existing, is an appropriate selection, because it is desirable to render collective bargaining of a company's employees an immediate possibility, without waiting until a later time when a larger group of geographically separated employees become interested in collective bargaining. The principle was approved by the Supreme Court in National Labor Relations Board v. Hearst Publications, 322 U.S. 111, 134, 135, 64 S. Ct. 851, 88 L.Ed. 1170. The evidence before the Board at the time when the ruling was made with respect to the issues of local and state-wide organization was sufficient to sustain the Board's action in making a

ruling based upon that principle. It will be noticed that the Board recognized the probability of state-wide organization later which might make it advisable to make a later finding of a larger unit when the extent of organization had progressed sufficiently to justify such a ruling. But it was both appropriate and permissible that a selection of a unit be made immediately, and under conditions then existing the ruling can not fairly be called either arbitrary or capricious.

The respondent insists, however, that when the Board made its finding on June 17, 1943 in the subsequent consolidated proceedings that "from the aforesaid facts it is clear that the time is ripe for the establishment of a state-wide unit in Ohio" its contemporaneous action in designating a state-wide unit but excluding the Toledo area was both arbitrary and capricious. It is also insisted that this finding immediately invalidated its prior designation of the Toledo area as being an appropriate unit, which effect was brought to the Board's attention by the motion of the respondent that the Decision and Direction of Election of June 17, 1943 be amended to conform to the Board's findings and that the Board revoke its certification of December 26, 1942 in the Toledo case so as to likewise make that tentative ruling conform to the facts as subsequently established. As has been above stated, the Board declined to modify either of its two rulings. Whether or not this action of the Board in refusing to immediately revoke its ruling in the Toledo case and to amend its ruling in the other case is arbitrary and capricious is the precise question for decision. A stubborn refusal of the Board over an unreasonable period of time to so amend its rulings to conform with its subsequent findings of fact would probably constitute an abuse of discretion on its part, but a temporary refusal to change a ruling which has not yet been in existence a reasonable period of time in order not to unduly disrupt a situation which the Board itself had caused to be recently established is quite another question. Particularly is this so when the action of the Board has indicated that it intends to conform its ruling to the changed facts when it can be so done without confusion and without undue disruption of labor relationships just established. It is settled that a certification by the Board is entitled to a reasonable period of existence, irrespective of the fact that conditions may

have materially changed immediately after the certification. A contrary rule to the effect that materially changed conditions, regardless of how soon they occur, must immediately be recognized and translated into orders by the Board would, as was said in National Labor Relations Board v. Botany Worsted Mills, supra, 133 F.2d at page 881, "make chaos out of the administration of the statute and prevent the protection of the very rights which it aimed to secure." A bargaining relationship once rightfully established should be permitted to exist and function for a reasonable period during which it can be given a fair chance to succeed. Since the Act does not prescribe the length of time for which any certification shall remain valid, it has been held that an employer must recognize a certification rightfully given for a reasonable period of time, regardless of materially changed conditions. "After such a reasonable period the Board may, in a proper proceeding and upon a proper showing, take steps in recognition of changed situations which might make appropriate changed bargaining relationships." Franks Bros. Co. v. National Labor Relations Board, 321 U.S. 702, 705, 706, 64 S.Ct. 817, 819, 88 L.Ed. 1020; National Labor Relations Board v. Appalachian Electric Power Co., 4 Cir., 140 F.2d 217, 221, 222; National Labor Relations Board v. Botany Worsted Mills, supra, 133 F.2d 876, at page 882. Certification involves, under § 9(b) of the Act, both a decision by the Board of the appropriate unit for the purposes of collective bargaining and the ascertainment by the Board of the bargaining representative. American Federation of Labor v. National Labor Relations Board, supra (308 U.S. 401, 405, 60 S.Ct. 300, 84 L.Ed. 347). While we recognize the desire of the respondent for reasons of convenience and in order to have Ohio conform to the pattern existing in other states that immediate action be taken, yet its desire is only one element in the picture, and is neither binding upon the Board nor decisive of the question. The Board's exclusion of the Toledo area from an otherwise state-wide unit was based on the fact that its prior certification of the Toledo area in the Toledo case had just recently been made, less than six months before. Its refusal to take immediate action in revoking that certification before the lapse of a reasonable time was not arbitrary or capricious.

One other observation is pertinent in the Toledo case. The respondent refused to negotiate with the Toledo unit on May 25, 1943. At that time the Board had not made its finding of June 17, 1943 favoring a state-wide unit. Its prior certification of the Toledo unit was in full force and effect, unmodified and uninvalidated in any way by any subsequent ruling or finding. At that time the respondent could not rely upon the later finding of June 17, 1943, or upon subsequent changed conditions. Until such changed conditions are reflected by a later ruling of the Board, or by arbitrary refusal to act after a reasonable time, a valid existing certification must be honored. The respondent had no right to make the ruling that changed conditions invalidated the existing certification, such right being exclusively in the Board. Franks Bros. v. National Labor Relations Board, supra; National Labor Relations Board v. Appalachian Electric Power Co., supra.

The order of the National Labor Relations Board is directed to be enforced in each case.