## NATIONAL LABOR RELATIONS BOARD v. SANSON HOSIERY MILLS, Inc.

### No. 13726.

United States Court of Appeals
Fifth Circuit.

April 10, 1952.

Rehearing Denied May 10, 1952.

Bernard Dunau, A. Norman Somers, Asst. Gen. Counsel, and David P. Findling, Assoc. Gen. Counsel, National Labor Relations Bd., all of Washington, D. C., for petitioner.

Geoffrey J. Cunniff, Philadelphia, Pa., George M. Ethridge, Jr., Meridian, Miss., for respondent.

Before HOLMES, BORAH and STRUM, Circuit Judges.

STRUM, Circuit Judge.

This is a petition by National Labor Relations Board, filed pursuant to sec. 10(e) of the National Labor Relations Act, 29 U.S.C.A. § 160(e), seeking enforcement of the Board's order of December 29, 1950, directing respondent Sanson Hosiery Mills to bargain with a designated Union as the representative of respondent's production and maintenance employees. The Company resists enforcement of the order upon the ground that said Union is no longer the lawful bargaining agent for said employees, so that the Company is under no obligation to deal with the Union.

Pursuant to an election held February 7, 1947, the Board on May 2, 1947, certified the Union as the bargaining agent for said employees. After negotiations, the Company and the Union on November 19, 1947, entered into a collective bargaining agreement covering said employees. The agreement contained no provision as to its duration. About a year after the agreement was signed, the Company learned that a decertification petition, seeking to displace the Union as bargaining representative, was about to be filed with the Board. On November 17, 1948, the Company notified the Union that in view of the pendency of the decertification proceedings, in which it was asserted that the Union no longer represented a majority of the employees, the Company regarded the bargaining agreement of November 19, 1947, as terminated. The Union refused to concur in the Company's attitude.

On November 19, 1948, a decertification proceeding was in fact filed by a group of the Company's employees, seeking a rescission of the Union's authority to act as their representative. On June 28, 1949, after hearing, the Board dismissed the petition under its so-called "contract bar" rule which holds that where, as here, a bargaining agreement of indefinite duration is entered into, such contract bars a re-determination of the bargaining status of the representative Union for two years after execution of the contract.

After dismissal of the decertification petition, the Union sought to resume negotiations with the Company, but the Company expressed its doubts that the Union represented a majority of the employees, reiterated its termination of the contract as of November 17, 1948, and refused to further negotiate with the Union until its status had been re-determined by the Board and the Courts. This refusal led to an unfair labor practice charge, filed by the Union July 28, 1949, which charge sustained by the Board, culminated in the order of December 29, 1950, enforcement of which is here sought. The employees have made no complaint against the employer.

A group of employees claiming to represent 70 to 80% of respondent's employees filed a second decertification petition with the Board on March 15, 1950, more than two years after the contract of November 19, 1947. This petition was also dismissed by the Board, solely because of the pendency of the unfair labor charge filed by the Union against respondent July 28, 1949, which charge resulted in the order of December 29, 1950, here under consideration.

The Company contends that since the bargaining contract contains no provision as to duration, it is terminable at the will of either party after a reasonable time and that it effectively terminated this contract by its notice to the Union dated November 17, 1948. The Board, on the other hand, contends that one of the purposes

of the Act is to stabilize industrial relationships and to give them a fair degree of permanency, and that in the absence of exceptional circumstances two years is a reasonable period of repose when a bargaining agreement, such as this, has been concluded between employer and employees. This proceeding was instituted, and the Board's order entered, prior to the amendments approved October 22, 1951, to Sec. 9 of the Labor Relations Act, 29 U.S.C.A. § 159(e) (1, 2).

Although certification of a bargaining representative by the Board is not intended to create a permanent relationship without regard to new situations that may develop, there must be a reasonable measure of stability to the relationship so established, as it is one of the objectives of the Act to stabilize as well as improve industrial relations. Such a certification, when lawfully made, must be respected by the employer until changed conditions are reflected by a later ruling by the Board altering or setting aside the certification. This is true, even though the bargaining agent so designated has lost its majority representation of the employees by reason of the subsequent defection of some o. those originally voting for it as their representative. The existing certification must nevertheless be honored until lawfully rescinded.[1] Even if we assume that this bargaining contract was effectually terminated by the Company's notice of November 17, 1948, that fact did not of itself terminate the Union's status as bargaining representative. On the contrary, that status continues until terminated by the Board, unless the Board arbitrarily refuses to act.

Originally, the Board regarded one year as a reasonable period of repose for these contracts, and this received the sanction of the courts. See cases cited in Note 1. In 1947 the Board enlarged the period to two years, and undertook to apply that period here. By the amendments approved October 22, 1951, to Sec. 9 of the Labor Relations Act, effective after this proceeding was commenced, Congress made it the mandatory duty of the Board to hold an election upon the filing of a petition by 30% or more of the employees in a bargaining unit, provided no valid election shall have been held within the preceding twelve-month period, thus establishing one year as a period of repose. See 29 U.S.C.A. § 159(e) (1, 2), as amended October 22, 1951.

If, as respondent asserts, the Board has arbitrarily or unjustifiably refused to consider the employees' petition for a change in their bargaining representative, it is the employees who are harmed, not the employer. Any controversy arising over the question of representation would be one between the bargaining agent and the employees, with which the employer is not concerned. Such a controversy is wholly extraneous to the issue here presented, which is whether or not the respondent has unjustifiably refused to further recognize and deal with the duly certified representative of the employees.

If the employees are being unlawfully denied the right to change their bargaining representative, they have recourse to this Court by petition to review the Board's action. The employer can not vicariously raise the question for them, as it here seeks to do, in justification of its refusal to further negotiate with the duly certified bargaining representative, whose status as such has not been terminated by the Board.

Nor can the employer decide for itself whether the Union has lost its bargaining status, and deciding that it has, refuse to deal with it further. Whether or not the Union has lost that status is for the Board to determine upon orderly stat-

1. N. L. R. B. v. Mexia Textile Mills, 339 U.S. 563, 70 S.Ct. 826, 833, 94 L.Ed. 1067; Franks Bros. Co. v. N. L. R. B., 321 U.S. 702, 64 S.Ct. 817, 88 L.Ed. 1020; N. L. R. B. v. Appalachian Power Co., 4 Cir., 140 F.2d 217; Motor Valve & Mfg. Co. v. N. L. R. B., 6 Cir., 149 F.2d 247; N. L. R. B. v. Geraldine Novelty Co., 2 Cir., 173 F.2d 14; N. L. R. B. v. Blair Quarries, 4 Cir., 152 F.2d 25; N. L. R. B. v. Prudential Ins. Co., 6 Cir., 154 F.2d 385; N. L. R. B. v. Grace Co., 8 Cir., 184 F.2d 126.

utory procedure. N. L. R. B. v. Prudential, 6 Cir., 154 F.2d 385, headnote 10. Meanwhile, it is the duty of the employer to deal with the duly certified Union.

Moreover, when on November 17, 1948, the respondent refused to further deal with the Union, there was no proof, but only assertion by the employer, that the Union had lost its majority. We have not overlooked the argument that this was conceded. Even if it be true that the Union had lost its majority, that fact, for the reasons already stated, would not alter our decision.

The Board's petition is granted, and its order enforced.