Charles T. DOUDS, Regional Director of the Second Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner,

v.

INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, INDEPENDENT, and William V. Bradley, Its President, and Patrick J. Connolly, Its Executive Vice President and Chairman of Its Wage Scale Committee, Atlantic Coast District, Respondents.

United States District Court
S. D. New York.

Dec. 12, 1956.

Joseph I. Nachman, Sidney Danielson, Washington, D. C., John J. Cuneo, New York City, for petitioner.

Waldman & Waldman, New York City, for respondents, Louis Waldman, Seymour Waldman and Martin Markson, New York City, of counsel.

Lorenz, Finn & Giardino, New York City, amicus curiae, for New York Shipping Ass'n, Alfred Giardino, C. P. Lambos, New York City, of counsel.

FREDERICK VAN PELT BRYAN, District Judge.

This is a petition for a temporary injunction brought by the National Labor Relations Board, pursuant to Section 10 (j) of the National Labor Relations Act (hereinafter called the Act), as amended, 29 U.S.C.A. § 160(j). That section gives this Court jurisdiction to grant a temporary injunction pending a disposition by the Board of a complaint issued by it charging that the respondents are engaging in an unfair labor practice under Section 8(b) (3) of the Act, 29 U.S.C.A. § 158(b) (3). Under Section 10(j) of the Act the Court is authorized to grant "such temporary relief or restraining order as it deems just and proper".

The petition was filed after a complaint had been issued by the Board, pursuant to Section 10(b) of the Act, 29 U.S.C.A. § 160(b), upon a charge filed by the New York Shipping Association (hereinafter called Association), which alleged that the respondent Union (hereinafter called ILA) and its officers were engaging in an unfair labor practice by refusing to bargain with the Association, representing the employers, in the unit certified by the Board as the appropriate collective bargaining unit, in this case the Port of Greater New York and vicinity.

■ On November 21, 1956 I signed a temporary restraining order pending a hearing before the Court as to the facts. The sole issue to be determined is whether there was reasonable cause to believe that the violation of the Act, as set forth in the complaint, has been committed. Bowles v. Montgomery Ward & Co., 7 Cir., 143 F.2d 38, 42. It does not involve a determination as to the ultimate merits of the complaint, that question being one to be determined by the Board itself.

At the hearing a full and complete picture was presented of the negotiations between the Association and the ILA which led to the complaint issued by the Board. While some specific facts, as well as the legal consequences of the parties' respective positions in the negotiations, were in dispute, there was no real controversy over the course and tenor of the negotiations.

These negotiations were commenced by the Association and the ILA on August 1,

1956 in an endeavor to arrive at a new collective bargaining agreement to replace a 2-year agreement which was due to expire on September 30, 1956. The old agreement covered only employees in the Port of Greater New York and vicinity. This area had been designated by the Board in 1953 as the appropriate bargaining unit.

Throughout the negotiations, however, the ILA included, among other demands, a demand that the negotiations be carried on for employees who were not within the unit of the Port of Greater New York and vicinity. In the early part of the negotiations this demand was, in substance, that negotiations on such major issues as wages and hours, among others, be for all ports from Portland, Maine, to Brownsville, Texas.

On July 31, 1956 the International Brotherhood of Longshoremen (AFL), a rival of the ILA, had filed a petition with the Board for a new election to determine the Union representative of the employees in the Greater New York unit. Such an election was duly held on October 17, 1956 by the Board and the ILA was successful. On October 25, 1956 the Board again certified the ILA as the representative for collective bargaining of the employees in the Port of Greater New York and vicinity, which, on September 24, 1956, it had found to be the appropriate bargaining unit.

The negotiations between the parties proceeded while this election and certification was going on. Subsequent to the election, but prior to the certification, the ILA modified its demand to bargain for all employees in all ports from Portland, Maine, to Brownsville, Texas, to a demand that negotiations on the major issues between the parties include only all employees of the employer members of the Association in such ports. This demand, if granted, would have resulted in an agreement covering not only all employees in the Port of Greater New York, but also all other employees of Association members who were employed in other ports from Portland, Maine, to Brownsville, Texas.

Both the original demand and the modified demand were rejected by the Association, which insisted upon negotiating solely for the Port of New York unit. The Union continued to insist on its modified demand for coast-wide bargaining subsequent to the certification by the Board on October 25, 1956. The Association continued to reject this demand.

On November 15, negotiations reached an impasse and a strike was called by the ILA in all Atlantic and Gulf Coast ports. Negotiations were held by the parties even subsequent to the strike, but their respective positions have remained unchanged until the present date.[1]

On October 23, 1956 the Association filed a charge of unfair labor practices with the Board, alleging that the ILA's demand for coast-wide bargaining constituted a refusal to bargain in good faith in the bargaining unit certified by the Board, in violation of Section 8(b)(3) of the Act. After investigating this charge the Board issued a complaint on November 21, 1956 and petitioned this Court for a temporary injunction.

Two preliminary questions must be disposed of before I can turn to the merits of the petition.

The ILA contends that the conditions prescribed in Sections 10(j) and 10(b) of the Act have not been complied with and this Court therefore has no jurisdiction to entertain the petition for a temporary injunction. Section 10(j) provides that the issuance of a complaint by the Board charging an unfair labor practice is a condition precedent to the jurisdiction of this Court to entertain a petition by the Board for temporary relief. Section 10(b) provides that the Board may not issue a complaint on its own motion, but that a charge must theretofore have been

---

1. It may be noted that on November 24, 1956 the continuance of the strike was enjoined by this Court under the National Emergency provisions of the Taft-Hartley Act, 29 U.S.C.A. § 178. The members of the ILA have now returned to work pursuant to the provisions of that order.

filed with it that an unfair labor practice existed.

The ILA asserts that the charge filed against it by the Association was wholly void and without effect since on its face it showed that the Union was not violating any duty to bargain. It argues therefore that the complaint issued by the Board was a nullity since no valid charge of an unfair labor practice had ever been filed with the Board.

■ To understand this attack on the court's jurisdiction it is necessary to return briefly to the facts. As has been pointed out, since July 31, 1956, the day before the ILA and the Association commenced their negotiations, a petition was pending before the Board for an election to determine whether the ILA should be certified as the bargaining representative for the employees in the Port of Greater New York. Until that election was held and the ILA was certified as the bargaining representative on October 25, 1956, no duty to bargain existed on the part of either the ILA or the Association. All such obligations were suspended pending determination by the Board of who the bargaining representative of the employees should be. Midwest Piping and Supply Co., 63 N.L.R.B. 1060; National Carbon Division, 104 N.L.R.B. 416.

The charge against the ILA of refusal to bargain was filed on October 23, 1956 and covered only the period between August 1, 1956 and October 22, 1956, when the Union was under no duty to bargain. Hence, the ILA reasons that the charge on its face failed to show that the ILA had committed an unfair labor practice

since it had, up to then, been under no obligation at all to bargain. It therefore argues that since the charge was a nullity the complaint was necessarily a nullity and that therefore this Court lacks jurisdiction.[2]

■ Under Section 10(b) of the Act, the Board may not initiate a complaint unless a charge has been filed with it. N. L. R. B. v. National Licorice Co., 2 Cir., 104 F.2d 655, affirmed, 309 U.S. 350, 60 S.Ct. 569, 84 L.Ed. 799. Furthermore, the Board may not issue a complaint when it is unrelated to the alleged unfair labor practices set forth in the charge filed with it. N. L. R. B. v. Kohler Co., 7 Cir., 220 F.2d 3, 7. But only to that extent does the charge limit powers of the Board to issue a complaint.

■■ Numerous cases hold that the charge filed with the Board is not a pleading, but merely a procedural step necessary to set the Board's investigation in motion. Once a formal complaint is filed, the Board's complaint thereafter issued is valid if it deals with a violation related to the one involved in the charge and which grows out of it. National Licorice Co. v. N. L. R. B., 309 U.S. 350, 60 S.Ct. 569, 84 L.Ed. 799, affirming 2 Cir., 104 F.2d 655; N. L. R. B. v. Kohler Co., supra; N. L. R. B. v. Bradley Washfountain Co., 7 Cir., 192 F.2d 144, 149. As the Supreme Court stated in National Licorice Co. v. N. L. R. B., supra, 309 U. S. at page 369, 60 S.Ct. at page 579:

"Whatever restrictions the requirements of a charge may be thought to place upon subsequent proceedings by the Board, we can find no warrant in the language or

---

2. The Board has conceded that no duty to bargain existed until the results of the representation election, held on October 20, 1956, were known. However, the Board argues that an unfair labor practice could still have been committed between August 1, 1956 and October 22, 1956, the period encompassed in the charge filed by the Association. This contention is based on either or both of two theories: (1) Even though no duty to bargain existed, once the parties decided to negotiate, they were obligated to

negotiate in good faith for the certified unit. (2) While the ILA was not certified by the Board as the bargaining representative until October 25, 1956, the election results which resulted in a victory for the ILA were known on October 20, 1956, at which time the parties came under a duty to bargain.

My decision is predicated upon the assumption that there was no duty to bargain during the period covered by the charge. It is therefore unnecessary to pass on these two arguments.

purposes of the Act for saying that it precludes the Board from dealing adequately with unfair labor practices which are related to those alleged in the charge and *which grow out of them while the proceeding is pending before the Board.*" (Emphasis added.)

██ Once the Board's investigation has been set in motion by a filed charge, it is the facts found as a result of the investigation which determine whether a complaint alleging violation of the Act should be filed. When a complaint is issued after such an investigation its validity is to be determined by its own allegations and it is valid if the allegations show that unfair labor practices exist related to or growing out of the charge filed. N. L. R. B. v. Indiana & Michigan Electric Co., 318 U.S. 9, 18, 63 S.Ct. 394, 87 L.Ed. 579.[3]

██ The charge filed by the Association in this case served its proper function of empowering the Board to investigate whether the ILA was committing an unfair practice at the time its investigation took place. Upon the basis of its investigation, the Board, believing that a refusal to bargain, an unfair labor practice, may have existed, issued the complaint. The complaint was based, in substantial part at least, on acts of the ILA subsequent to October 25, 1956, during a period when the ILA admits it had a duty to bargain. Allegations of the complaint which related to acts of the Union during the period when it was under no duty to bargain, are irrelevant as is the question of whether the existence of an unfair labor practice could have been established solely under the allegations of the charge. It is sufficient to sustain the jurisdiction of the Court that the complaint was based on matters related to the subject matter of the charge, growing out of it, and occurring during a period in which the ILA was duty-bound to bargain. The first preliminary objection is therefore overruled.

The second preliminary issue to be disposed of involves an offer of proof by the ILA. At the end of their case respondents offered in evidence the record of testimony before the Board's Hearing Examiner on the request by the ILA in the election proceedings that the Board certify all ports from Portland, Maine, to Brownsville, Texas, as the appropriate bargaining unit.

This proof was offered upon two theories. First, the ILA contended that in passing on the validity of the complaint the Court must necessarily determine whether the certification by the Board of the appropriate bargaining unit was reasonable. Secondly, it argued that whether or not this was so, the evidence before the Board would tend to show that the actions of the ILA thereafter with respect to their demand for coast-wide bargaining were reasonable and proper.

3. The ILA relies on two Board decisions as support for its contention that the complaint filed by the Board was a nullity and that, therefore, this Court lacks jurisdiction. These two decisions are Mid-States Steel & Wire Co., 112 N L. R.B. 800 and New York Shipping Ass'n, 112 N.L.R.B. 1047.

In Mid-States Steel & Wire Co. the Board dismissed a complaint on the ground that no valid charge was ever filed with the Board. The charge which had been filed dealt only with an alleged violation which had occurred more than six months before the charge itself was filed. Section 10(b) of the Act specifically precludes the Board from issuing a complaint upon a charge involving a violation occurring more than six months prior to the filing of the charge. Of course, pursuant to such mandatory language in the statute, the Board was required to dismiss the complaint. There is, however, no similar requirement in the statute that the Board may not issue a complaint on the basis of subsequent acts related to or growing out of a charge which in itself does not allege all the elements of an unfair labor practice.

The New York Shipping Ass'n decision is entirely inapposite. There the Board dismissed a complaint because the Hearing Examiner had already dismissed the charge. This decision stands only for the proposition that the Board may not issue a complaint unless a charge is outstanding.

The Board objected to this offer upon the ground that this Court had no authority in this proceeding to review the Board's determination and was bound by it, and that the question of whether or not the actions of the ILA subsequent to the certification were reasonable, was not at issue in this proceeding. It maintained that both questions had already been foreclosed by the certification of the Board as to the appropriate bargaining unit.

I reserved decision on both the offer of proof and the objection. That question must now be decided.

 The Act does not provide for a direct judicial review of a determination of the Board fixing the appropriate unit for bargaining. Such judicial review can be had only after the Board has made a final order determining whether an unfair labor practice exists. An application for such judicial review must be addressed to the Court of Appeals, not the District Court, pursuant to Section 10(e) and (f) of the Act. See Pittsburgh Plate Glass Co. v. N. L. R. B., 313 U.S. 146, 154, 61 S.Ct. 908, 85 L.Ed. 1251; A. F. L. v. N. L. R. B., 308 U.S. 401, 408–411, 60 S.Ct. 300, 84 L.Ed. 347.[4]

 Thus the sole original jurisdiction to review orders or certifications of the Board lies in the Court of Appeals. This Court cannot usurp that jurisdiction. It is bound by a valid and subsisting certification by the Board of an appropriate bargaining unit in the absence of a change in such ruling by the Board itself or of reversal of the Board's certification by the Court of Appeals. N. L. R. B. v. Prudential Insurance Co., 6 Cir., 154 F.2d 385, 390.

My only function on this petition is to determine whether there is reasonable cause to believe that ILA has been guilty of an unfair labor practice by refusing to bargain in the unit presently certified by the Board as the appropriate bargaining unit. Brown, for and on behalf of N. L. R. B. v. Pacific Telephone & Telegraph Co., 9 Cir., 218 F.2d 542, 543.

 I may not consider the proffered proof either to impugn the subsisting certification by the Board or as evidence that the ILA acted reasonably and properly in attempting to go beyond the Board's certification. Admission of this proof on the latter theory would permit me indirectly to overrule the certification which the Board had made. The Board's objection to this offer of proof is therefore sustained and the proof which was offered has not been considered by me in deciding this case.

I turn now to the merits of the petition.

The sole question is whether there is reasonable cause to believe that the ILA has refused to bargain collectively with the Association within the meaning and intent of Section 8(b) (3) of the Act and thus was engaged in an unfair labor practice.

 It is plain that refusal to bargain collectively within the meaning of this provision is not necessarily limited to a carte blanche refusal to conduct any negotiations with the employer on any subject. If one of the parties to labor negotiations insists that an agreement cannot be reached except upon conditions which violate the Act, then it has refused to bargain collectively in good faith and is engaging in an unfair labor practice within the meaning and intent of Section 8(b) (3). National Maritime Union, 78 N.L.R.B. 971, 981–82.

 In this case it appears that the ILA insisted upon its demand that any agreement to be reached with the Association must cover employees on a coast-wide basis in all ports from Portland, Maine, to Brownsville, Texas, as well as employees in the certified bargaining unit of the Port of Greater New York. The ILA consistently took this

4. In reviewing the Board's determination of the scope of the appropriate unit, the Court of Appeals will not reverse the Board unless it finds the determination to be clearly arbitrary. N. L. R. B. v. National Broadcasting Co., 2 Cir., 150 F.2d 895, 898.

position up to the very time of the commencement of this proceeding. The Association has as consistently rejected the demand and insisted that it could not be an element of any agreement to be reached. The insistence of the Union on this key demand, after the employers' rejection of it, was contrary to the determination of the Board which confined the appropriate bargaining unit to the Port of Greater New York and vicinity. This constituted a refusal to bargain collectively with the employer under Section 8 (b) (3).

The ILA contends that these acts do not constitute a refusal to bargain collectively within the meaning of the Act and offers two main objections to the granting of the petition. First, it contends that the finding by the Board that the appropriate bargaining unit was confined to the Port of Greater New York and vicinity did not preclude it from bargaining for employees in a unit composed of all ports from Portland, Maine, to Brownsville, Texas.

▬▬▬ It is difficult to find any merit in this contention. Under § 9(b) of the Act "the Board shall decide in each case * * * the unit appropriate for the purpose of collective bargaining * * * *". In this case the Board made such a decision and found on September 24, 1956, in New York Shipping Association, 116 N.L.R.B. No. 157:

"Accordingly we find, as we did in 1953, *the* scope of the appropriate

unit *to be confined* to the Port of Greater New York and vicinity." (Emphasis added.)

This determination overruled the contention made by the ILA before the Board that all ports from Portland, Maine, to Brownsville, Texas, should be found to constitute the appropriate bargaining unit. It may be that the broader scope requested by the ILA would not have been inappropriate for a bargaining unit. It is, however, for the Board to determine which of the proposed appropriate units it will certify as *the* appropriate unit. N. L. R. B. v. Smythe, 5 Cir., 212 F.2d 664, 666–67.[5]

▬▬▬ This issue has been litigated by the ILA before the Board and determined against it. The ILA cannot be heard to say in a proceeding of this nature, that the Board's determination that the appropriate bargaining unit be confined to the Port of Greater New York should be disregarded, and that its contention, already overruled by the Board, should now be sustained.

The ILA further argues that, even though the appropriate bargaining unit be confined to this Port, the evidence adduced at the hearing shows no refusal to bargain. It claims that its demand for coast-wide bargaining was merely a demand that the Association negotiate with it on a request that it could legally make and the Association legally could grant. There is no doubt that if both the ILA and the Association desired to negotiate for all coast ports, and there was no ob-

5. The ILA cites two N. L. R. B. decisions for the proposition that a determination by the Board of the appropriate unit does not preclude a party from demanding another and different appropriate unit: Owens-Illinois Glass Co., 108 N.L.R.B. 947; Lever Bros. Co., 96 N.L.R.B. 448. These decisions do not authorize the ILA unilaterally to disregard the Board's determination. They merely hold that the Board may, in its discretion, modify its previous determination as to the scope of the appropriate unit. These decisions arose upon an application under Section 9(c) of the Act for a Board determination of the appropriate

unit. Of course, on such an application, the Board need not continue the scope of the previously existing unit, but may change it to meet changing circumstances.

The Board may also modify the scope of the appropriate unit upon a charge that a party has committed an unfair labor practice in refusing to negotiate in the unit certified by the Board. The Board may then dismiss the charge on the ground that it has changed the scope of the unit to the scope demanded by the charged party. Mandel Bros., Inc., 77 N.L.R.B. 512. But that is up to the Board.

jection from any third party, they would be permitted to enter into a contract covering such a larger unit. However, this would have to be the voluntary act of the parties. Once one of the parties, in this case the Association, insisted on confining the negotiations to the certified appropriate bargaining unit, it was entirely within its rights in so doing. Nor could the ILA then insist upon bargaining for a larger unit because were it permitted to do so it would in effect vitiate the Board's certification and be in a position to compel the Association against its will to disregard the Board's certification.

Where both parties voluntarily enter into a contract for a unit larger in scope than the one certified by the Board, the Board has no power to order the parties to cease and desist from disregarding the Board's unit determination. But once a charge is filed with the Board, whether it be by a party to the negotiations [6] or by someone not a party,[7] the affirmative duty rests upon the Board to determine whether there has been a failure to bargain collectively in the unit certified by the Board. When such a charge is made the same attempt to negotiate for a unit larger than the one certified by the Board, legal and proper on a voluntary basis, may become an unfair labor practice where one of

the parties has invoked the jurisdiction of the Board by the filing of a charge.

Thus the ILA may have been entirely within its rights in the first instance in asking the Association to negotiate for a contract for all coast ports, and the Association could have accepted this proposal if it wished. But once the Association made it unequivocally clear that it was prepared to negotiate only for the unit certified by the Board, the ILA had no right to continue to demand that the unit certification of the Board be disregarded.[8]

To permit the ILA to do so would frustrate the Board's statutory duty to determine the appropriate unit. For, by the economic pressure of a strike or lockout, the stronger party could force the other to accept the unit desired by it in complete disregard of the Board's determination.

The ILA makes one further argument. It contends that since its demand for coast-wide bargaining was only one of a number of other demands on which agreement had not been reached, it did not in fact refuse to bargain collectively as charged, but was carrying on bargaining in good faith up to the time of the strike and even thereafter. It argues, therefore, that there are no reasonable grounds to believe that it has committed an unfair labor practice.

6. See, e. g., Valley Mould & Iron Corp. v. N. L. R. B., 7 Cir., 116 F.2d 760, 764–766; N. L. R. B. v. Smythe, 5 Cir., 212 F.2d 664; N. L. R. B. v. Prudential Ins. Co., 6 Cir., 154 F.2d 385; N. L. R. B. v. Appalachian E. Power Co., 4 Cir., 140 F.2d 217.

These cases all arose from charges filed by a labor union that an employer refused to bargain with the union for the unit certified as appropriate by the Board, in violation of Section 8(a) (3) of the Act.

I am not aware of any case where a charge was filed by an employer against the labor union, as done here by the Association, alleging that the Union refused to bargain for the certified unit, in violation of Section 8(b) (3) of the Act. There is no doubt, however, that an employer may file such a charge. "The obligation placed upon unions by this provision [Section 8(b) (3)] is the same as that imposed upon employees by Section 8(a) (3)." Sen.Rep. No. 105, 80th Cong., 1st Sess. 220. See also National Maritime Union, 78 N.L.R.B. 971, 980–81.

7. See, e. g., Brown, for and on behalf of N. L. R. B. v. Pacific Telephone & Telegraph Co., 9 Cir., 218 F.2d 542, where such a charge was filed by a rival Union which did not take part in the negotiations carried on by the employer with another Union for a unit larger in scope than the unit certified by the Board.

8. See National Maritime Union, 78 N.L.R.B. 971, 981–82; Rock City Paper Box Co., 64 N.L.R.B. 1527, 1528–29, 1538–39.

This contention is wholly unrealistic. It appears from the record that the ILA was insistent upon coastwide bargaining as modified in the later stages of the negotiations up to the time of the strike, and, in fact, up to the time when the temporary restraining order was granted. It is true that an impasse had also been reached on other basic demands and that the ILA insisted upon these demands as well as its demand for coast-wide agreement. But as to these other demands the ILA had a complete right to use whatever pressures were permissible to enforce them, including a strike if it should so determine. These were matters within the legitimate framework of the Act which the Union could seek to enforce by whatever legal means at hand.

The demand for coast-wide bargaining, however, (and there is no question from this record that it was a key demand), stood on a different footing. The Union was not entitled to compel the employer to accept that demand by the use of economic pressures, including strike, because such a demand was outlawed by the determination of the Board that the appropriate bargaining unit was confined to the Port of New York and the insistence of the Association that bargaining be limited to that unit.

Thus, when the ILA insisted upon this key demand, made it one of the items on which it refused to reach agreement with the Association, and even one of the grounds for strike, it therefore, in so far as appears from this record, committed an unfair labor practice by refusing to bargain collectively in the appropriate bargaining unit.

I have therefore found, on the record before me, that there are reasonable grounds to believe that the ILA is engaging in an unfair labor practice in violation of Section 8(b) (3) of the Act. In so doing I do not attempt to pass on the merits of the question. That is a matter for determination by the Board subject to review by the Court of Appeals.

The labor controversy between the ILA and the Association is of great importance and has concededly widespread effects. The public interest requires that negotiations between these parties be resumed and if possible consummated at the earliest date.

I am therefore persuaded that, to avoid irreparable injury to the public interest, it is just and proper to issue a temporary injunction, as prayed for by the Board, prohibiting the ILA from continuing to demand that the Association bargain with it for employees outside of the unit certified by the Board, pending a determination by the Board of the complaint now before it. An order to this effect has been signed, together with supporting Findings of Fact and Conclusions of Law.