The **WESTWARD–HO HOTEL COM-
PANY**, Petitioner and Respondent,

v.

**NATIONAL LABOR RELATIONS
BOARD**, Respondent and
Petitioner.

No. 24920.

United States Court of Appeals,
Ninth Circuit.

Feb. 5, 1971.

Daniel F. Gruender (argued), of Shimmel, Hill & Bishop, Phoenix, Ariz., for petitioner and respondent.

Donald Savelson (argued), Atty., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, N.L. R.B., Washington, D. C., C. Woodrow Greene, Atty., N.L.R.B., for respondent-petitioner.

Before MERRILL and HUFSTEDLER, Circuit Judges, and BYRNE, District Judge.*

MERRILL, Circuit Judge.

Petitioner Westward-Ho has initiated these proceedings to review an order of the National Labor Relations Board directing it to bargain with Hotel & Restaurant Employees & Bartenders, Local Union 631, AFL–CIO. The Board decided that Westward-Ho had violated § 8(a) (5) and (1) of the National Labor Relations Act, 29 U.S.C. § 158(a) (5) and (1), by refusing to bargain with the union after the union had won an election and had been certified as the representative of the hotel's kitchen employees. Westward-Ho contends that the Board's determination of the appropriate bargaining unit was controlled by the extent of union organization, in violation of § 9(c) (5) of the Act, and that its order should therefore be set aside. The Board cross-petitions for enforcement. We hold that the bargaining unit established by the Board was inappropriate, and we deny enforcement and set the Board's order aside.

I

Petitioner's hotel is located in downtown Phoenix, Arizona. The hotel has approximately 360 rooms, the normal hotel front offices, a dining room, a bar, a fountain, private meeting rooms and banquet facilities. The hotel also houses three private clubs, one of which is open to hotel guests. All three clubs are supplied by the hotel's kitchen and staffed by the hotel's employees. The hotel provides restaurant facilities primarily for its room guests, however: 80 per cent of the dining room business is attributable to hotel guests; 60 per cent of the entire hotel business is attributable to conventions. The employer's convention service involves the close co-ordination of all the hotel's employees.

In the Phoenix area at the time of the Board's decision the union represented employees of three other hotel or motel establishments. At all three locations the bargaining unit approved was an over-all unit combining kitchen, dining room and housekeeping employees.

There is no bargaining history in the particular unit approved by the Board. From 1943 to 1947 the union, under contract with petitioner, was the collective bargaining representative for a unit encompassing all employees at the Westward-Ho hotel. Since 1947 hotel employees (with the exception of maintenance and steamroom employees) have not been represented by any union.

In 1967 the union conducted an organizational campaign among Westward-Ho's employees. It was successful in obtaining a majority favoring unionization only among the kitchen employees. Consequently, when the union petitioned the Board for an election under § 9(c) of the Act, it sought a collective bargaining unit limited to Westward-Ho's kitchen employees.[1] The Board's regional direc-

---

* Hon. William M. Byrne, U. S. District Judge for the Central District of California, sitting by designation.

1. At the hearing before the Board's regional director the union business agent conceded that the extent of union organization controlled the union's selection of the unit it petitioned for. We note that it is only natural for a union to select the unit in which it feels its organizational

tor held a hearing, at which petitioner urged that the appropriate bargaining unit should include all operating personnel, including kitchen employees, and excluding only those employees who were already represented by another union: steamroom employees, stationary engineers and other maintenance employees. In the alternative, petitioner sought a unit composed of all restaurant employees, including kitchen employees. The regional director found, over Westward-Ho's opposition, that a bargaining unit limited to kitchen employees was appropriate. His decision was upheld by the Board on review. The union won the ensuing election and was duly certified as the collective bargaining representative of petitioner's kitchen employees.

In order to secure judicial review of the Board's unit determination, petitioner refused to bargain with the union. The unfair labor practice charge and compulsory bargaining order which form the basis of this proceeding ensued. The only issue presented on this appeal is whether the bargaining unit established by the Board was appropriate under § 9 of the Act.

## II

Although the Board performs an important and difficult task in selecting an appropriate bargaining unit,[2] the National Labor Relations Act affords remarkably little guidance to aid its unit determinations. Section 9(b) provides the Board with only a vague standard for determining whether a unit is "appropriate" for collective bargaining purposes:

"The Board shall decide in each case whether, in order to assure to employees the fullest freedom of exercising the rights guaranteed by this subchapter, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof * * *."

This broad delegation of authority, see Pittsburgh Plate Glass Co. v. NLRB, 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251 (1941), was limited in 1947 by the enactment of § 9(c) (5) of the Act, which provides that:

"In determining whether a unit is appropriate for the purposes specified in subsection (b) of this section the extent to which the employees have organized shall not be controlling."

While the language and legislative history of § 9(c) (5) leave its meaning ambiguous in some respects,[3] it is clear that Congress in passing this amendment intended to overrule Board decisions approving a unit that could

efforts have been most successful, and that so long as the Board in *its* decision does not give controlling weight to the extent of union organization, it is immaterial that such a consideration may have controlled the union's selection of a unit in its bargaining petition. *See, e. g.,* NLRB v. Moss Amber Mfg. Co., 264 F.2d 107, 109–111 (9th Cir. 1959).

2. "Frequently, [unit] determinations, like the drawing of election districts in other contexts, have been the decisive factor in board elections, determining whether there would be any collective bargaining at all in a plant or enterprise. Unions and employers have sought to gerrymander accordingly. Furthermore, when an election leads to the certification of one or more unions, the unit(s) delineate the scope of the unions' bargaining authority, shape the structure for bargaining, and

may influence the extent and legality of strikes and lockouts. Unit determination, accordingly, has important consequences on the character of bargaining structures, work-assignment disputes between unions, and the relative power of labor and management. * * *." B. Meltzer, Labor Law 290 (1970).

3. It has been remarked that "[s]ection 9 (c) (5), with its ambiguous word 'controlling,' contains a warning to the Board almost too Delphic to be characterized as a standard." Local 1325, Retail Clerks Int'l Ass'n, AFL–CIO v. NLRB, 134 U.S. App.D.C. 298, 414 F.2d 1194, 1199 (1969). For a discussion of other ambiguities in the meaning of § 9(c) (5) see Note, The Board and Section 9(c) (5): Multilocation and Single Location Bargaining in the Insurance and Retail Industries, 79 Harv.L.Rev. 811, 822 (1966).

only be supported on the basis of the extent of organization. NLRB v. Metropolitan Life Ins. Co., 380 U.S. 438, 441, 85 S.Ct. 1061, 1063, 13 L.Ed.2d 951 (1965).

Westward-Ho contends that an examination of prior Board decisions reveals that the Board's unit determination in this case marks a decided departure from established standards of unit determination in the hotel-motel industry. It argues that the reasons assigned by the Board for its action here do not justify such departure and that the only rational explanation is that, contrary to § 9(c) (5), the extent of union organiza-

tion was the controlling factor in the Board's determination.

Where the Board appears to depart from the standards for unit determination it has applied in the past it must articulate its reasons for doing so, since without a disclosure of the basis for its exercise of discretion its action cannot be judicially reviewed. NLRB v. Metropolitan Life Ins. Co., *supra*, at 442, 85 S.Ct. 1061.

Since the results in other recent decisions of the Board are relevant in determining whether there has been an evasion of § 9(c) (5), we have examined prior Board decisions in this area.[4]

---

4. Arlington Hotel Company, Inc., 126 N.L.R.B. 400 (1960), decided only a year after the Board first asserted jurisdiction over corporations in the hotel and motel industry (Floridan Hotel of Tampa, Inc., 124 N.L.R.B. 261 (1959)), announced the general rule of unit determination for the hotel-motel industry:

"[I]n the hotel industry all operating personnel have such a high degree of functional integration and mutuality of interests that they should be grouped together for collective bargaining purposes." Id. at 404.

Later Board decisions retreated from the hotel-wide rule in cases where a well-defined area practice of bargaining for less than a hotel-wide unit was shown. The Board first held, in Water Tower Inn, 139 N.L.R.B. 842 (1962), and Spinnenweber Builders, Inc., d/b/a Mariemont Inn, 145 N.L.R.B. 79 (1963), that units covering less than all of a hotel's employees were appropriate where there was both an area pattern of bargaining in such smaller units and a bargaining history in the particular unit sought. In LaRonde Bar & Restaurant, Inc., 145 N.L.R.B. 270 (1963), the Board went a step further and approved a motel unit that excluded office clerical employees, even though there was no bargaining history in the particular unit selected. Noting that the general rule of *Arlington Hotel Company, Inc., supra,* had already been modified in *Water Tower Inn, supra,* the Board justified its unit determination on the ground that "in finding a unit appropriate here which is less than hotel-wide in scope but which conforms to an existing and well-defined area practice, we are furthering the stability of collective bargaining relationships in the industry." 145 N.L.R.B. at 272. The Board reaffirmed the rationale of *La-*

*Ronde Bar & Restaurant, Inc., supra,* in Columbia Plaza Motor Hotel, 148 N.L.R.B. 1053 (1964). In that case the employer contended that only a hotel-wide bargaining unit was appropriate, and he sought to include maintenance department employees, office clerical help, desk clerks and telephone operators. The Board found that by well-defined area practice office clerical employees and desk clerks were always excluded; maintenance department employees and telephone operators were sometimes included and sometimes excluded. Accordingly the Board excluded clerical employees and desk clerks, but included maintenance employees. Telephone operators were excluded "because they have a greater community of interest with excluded clerical employees and desk clerks than with other hotel employees included in the unit." Id. at 1055.

In John Hammonds and Roy Winegardner, Partners, d/b/a 77 Operating Company, d/b/a Holiday Inn Restaurant, 160 N.L.R.B. 927 (1966), [hereinafter cited as 77 *Operating Company*] the *Arlington* rule was further relaxed. The Holiday Inn motel and restaurant involved in that case were separately incorporated and occupied separate buildings, although the offices for both were located in the restaurant building. The Board approved a unit limited to the restaurant employees. It stated:

"Since *Arlington,* the Board has gained much experience and better insight into the nature of the hotel-motel industry. Although, as was held in *Arlington,* employees in the various facilities of hotels and motels have a basic mutuality of interest, neither their function nor their mutual interests are in all cases integrated to such a high degree that an

From our review we conclude that at the time of the Board's decision in this case the hotel-wide unit established in *Arlington Hotel Co., Inc., supra,* note 4, remained the Board's standard for hotels and motels, subject to two exceptions: (1) Where well-defined area bargaining practices recognized as appropriate something less than a hotel-wide unit, the Board deferred to those practices in the interests of maintaining stability of collective bargaining relationships in the industry. *See Columbia Plaza Motor Hotel, supra,* note 4; *LaRonde Bar & Restaurant, Inc., supra,* note 4. (2) Where the enterprise was not highly integrated, and under the peculiar facts of the case the "true community of interest" among particular employees was less than hotel-wide, a smaller unit consistent with that true community of interest was held appropriate. *See 77 Operating Company, supra,* note 4.

It is against the backdrop of these standards for unit determination in the hotel-motel industry that we examine the basis of the Board's selection of a unit limited to Westward-Ho's kitchen employees.

### III

The Board has assigned seven reasons for its unit determination in this case:

overall unit should be found the only appropriate unit. Indeed, the employees in all facilities at hotels and motels today do not necessarily perform the single function of serving room guests. A business may operate in such a manner as to depend substantially upon other than room guests. Here, for example, the restaurant corporation also provides club rooms and banquet facilities. Nor does it seem that the motel provides complete restaurant facilities primarily for its relatively few room guests.

"*Arlington* took a valid principle (*if* functions and mutual interests are highly integrated, an overall unit alone is appropriate) and fashioned from it an inflexible rule to be applied to all hotels and motels. But, because our experience has indicated that such a degree of integrated functions and employee interests does not exist in every hotel or motel, we shall hereafter consider each case on the facts peculiar to it in order to decide wherein lies the true com-

(1) the separate identity and function of the kitchen employees, (2) their separate immediate supervision by the chef, (3) their minimal interchange with other employees, (4) their infrequent contact with the public, (5) the remoteness of the history of bargaining with this employer on a broader basis, (6) the fact that no other labor organization seeks a broader unit, and (7) since the hotel steamroom employees were separately represented on a craft basis, as was generally true in the Phoenix area, the Board concluded that "smaller units of hotel employees are a matter of industrial reality in the Phoenix area."

An examination of these reasons reveals that the first four considerations are generally true of kitchen employees everywhere and can hardly be said to constitute "facts peculiar to the case" or to indicate why, in this highly integrated hotel operation as distinguished from all others, the "true community of interest" of Westward-Ho's kitchen employees is confined to the kitchen. The fifth reason cited by the Board lends no support to its determination. It serves simply to de-emphasize the importance of the adverse fact that Westward-Ho bargained with the union on a hotel-wide basis in the past. We find nothing of substance in the seventh reason given

munity of interest among particular employees." 160 N.L.R.B. at 929–930.

The only instance in which the Board has approved a unit comprised of kitchen employees alone was in the case of a restaurant. Toffenetti Restaurant Co., 133 N.L.R.B. 640 (1961). There the Board stated:

"In the circumstances of this case, especially the separate work functions of kitchen employees in the restaurant, their infrequent contact with restaurant clientele, the absence of any substantial interchange between them and other restaurant employees, and the existence of an area pattern for bargaining on the basis of separate kitchen units in restaurant establishments * * * we find a separate unit of the employer's kitchen unit to be appropriate." Id.

The Board was careful to point out in a footnote that its decision was "not to be construed as a modification of existing Board policy as to hotel units." Id. at n. 1.

by the Board. The fact that in the Phoenix area certain employees are customarily represented on a craft basis does not seem to bear directly on the question whether the true community of interest for the remaining employees should be found to encompass a hotel-wide unit or something smaller. The sixth and only remaining reason cited by the Board strongly suggests that the Board's action was controlled by extent of organization.

■ In support of the sufficiency of its list of reasons the Board correctly notes that extent of organization can be taken into consideration in selecting an appropriate bargaining unit. " * * * [B]oth the language and legislative history of § 9(c) (5) demonstrate that the provision was not intended to prohibit the Board from considering the extent of organization as one factor, though not the controlling factor, in its unit determination." NLRB v. Metropolitan Life Ins. Co., *supra*, at 441–442, 85 S.Ct. at 1063. As the District of Columbia Circuit recently stated in Local 1325, Retail Clerks Int'l Ass'n, AFL–CIO v. NLRB, 134 U.S.App.D.C. 298, 414 F.2d 1194, 1199–1200 (1969), § 9(c) (5) "has generally been thought to mean that there must be substantial factors, apart from the extent of union organization, which support the appropriateness of a unit, although extent of organization may be considered by the Board and, in a close case, presumably may make the difference in the outcome."

The Board also asserts that it is not required to select the *most* appropriate bargaining unit, but only *an* appropriate unit within the range of several appropriate units in a given factual situation. *See, e. g.* State Farm Mutual Auto Ins. v. NLRB, 411 F.2d 356, 358 (7th Cir.), cert. denied, 396 U.S. 832, 90 S.Ct. 87, 24 L.Ed.2d 83 (1969).

In this case, however, the Board goes still further. It seems to take the view that its ability to select among "several overlapping appropriate units of different sizes" means that if it selects a well-defined and functionally coherent group of employees, that group, by that fact alone (and without giving any weight to extent of organization), can be found to constitute an appropriate unit and on review its unit determination must be upheld.

■ On this we cannot agree. It is well-settled, of course, that the Board has a singularly wide discretion to determine appropriate bargaining units. *See, e. g.* Packard Motor Car Co. v. NLRB, 330 U.S. 485, 491–493, 67 S.Ct. 789, 91 L.Ed. 1040 (1947); NLRB v. Hearst Publications, 322 U.S. 111, 132–135, 64 S.Ct. 851, 88 L.Ed. 1170 (1944). But the Board's discretion is not unlimited. Both the legislative history of § 9(c) (5) and the Supreme Court's decision in NLRB v. Metropolitan Life Ins. Co., *supra*, make it clear that the mere fact that the Board selects a unit consisting of a well-defined and functionally coherent group of employees does not by itself mean that its determination must be accepted by a reviewing court.[5] We

---

5. The House Report on § 9(c) (5) expressly criticized the Board's unit determination in *Botany Worsted Mills* (discussed *infra*), see H.R.Rep. No. 245, 80th Cong., 1st Sess., 37 (1947), even though the unit selected in that case consisted of a well-defined and functionally coherent group of employees.

In the *Metropolitan Life Ins.* case the Board had selected a bargaining unit limited to employees at one of Metropolitan Life's district offices. The Board justified its choice on the grounds that the individual district office selected was located in a separate and distinct geo-graphical area; that the district office was a separate administrative entity and therefore inherently appropriate as a unit; that there was no recent history of collective bargaining with the employer; and that no union was seeking a larger unit. Despite these considerations, the Supreme Court found that the reasons given by the Board were insufficient as a basis for decision, in view of the Board's "lack of articulated reasons for the decisions in and distinctions among" its recent unit determinations. 380 U.S. at 442–443 & n. 5, 85 S.Ct. at 1064.

agree with Local 1325, Retail Clerks Int'l Ass'n, AFL–CIO v. NLRB, *supra*, at 1201, that where prior Board decisions suggest that a unit determination was arbitrary or has been controlled by extent of organization, the Board must give reasons for its choice that effectively rebut the inference that it has acted improperly.

The Board contends that it has not departed from prior decisions; it argues that it is simply following a trend it has already established in relaxing the holding in *Arlington*. It points to *Toffenetti Restaurant Co., supra*, note 4, as evidence that the Board has previously recognized that kitchen employees share a community of interest. It construes *77 Operating Company, supra*, note 4, as announcing a new rule that thereafter it would examine the particular circumstances of each case to determine the unit that represents the true community of interest.

We do not feel that the Board's prior decisions can be so easily disposed of. In *Toffenetti* there was a widespread local pattern of bargaining for kitchen units in restaurant establishments. In *77 Operating Company* the Board recognized that the *Arlington* hotel-wide unit rule would continue to apply where a high degree of integration of function and mutual interests existed among employees. In announcing that it would thereafter consider each case on its facts, the Board stated that it would

search for factors distinctive of the particular operation, indicating not *a* community of interest (which can certainly be found in any functionally coherent group), but *"the true* community of interest." 133 N.L.R.B. 640 (emphasis added).

An examination of Board actions in the Phoenix area since its ruling in this case strengthens our conclusion that the Board acted contrary to § 9(c) (5) here. Since its unit determination in this case, the Board has found over-all units to be appropriate in the case of two motels with restaurant facilities and two restaurants.[6]

Rather than a further step in the gradual relaxation of the rigid hotel-wide rule announced in *Arlington*, the Board's action here seems to be a retrogression to Botany Worsted Mills, 27 N.L.R.B. 687 (1940), which appears from the legislative history of § 9(c) (5) to have been the kind of unit determination Congress intended to preclude. The House Report on § 9(c) (5) expressly criticized that decision as an example of a case in which "the Board pretends to find reasons other than the extent to which the employees have organized as ground for holding such units to be appropriate." H.R.Rep. No. 245, 80th Cong., 1st Sess. 37 (1947). We find that *Botany Worsted Mills* on its facts so closely resembles the case now before us that respect for Congressional intent in the enactment of § 9(c) (5) precludes enforcement of the Board's order here.[7]

---

6. See Regional Director's Decision [RC], Greyhound Food Managements Inc., d/b/a Post Houses, Inc., 28 RC–1812 (July 12, 1968) (A. 128); Ramada Inns, Inc., 28 RC–1741 (Feb. 8, 1968) (A. 130); Desert Enterprises, A Partnership d/b/a Desert Hills Hotel, Incorporated, 28 RC–1778 (May 22, 1968) (A. 134); Associated Hosts of Arizona, d/b/a Coffee Dan's, 28 RC–1961 (Sept. 6, 1967) (A. 126). The Board's explanation in its

brief that in those cases "either the parties were in agreement as to the unit, or the union sought to represent the employees in an overall unit" only reinforces the suggestion that extent of organization was the controlling factor in its selection of Westward-Ho's kitchen employees.

7. In *Botany Worsted Mills, supra*, the Board found that the wool sorters and trappers, including overlookers, of a tex-

In our view, then, the unit determination here does depart from the Board's prior decisions and announced standards for unit determination in the hotel-motel industry. The Board's decision in this case appears to ignore the high degree of integration in Westward-Ho's hotel operation and is contrary to local bargaining patterns to which the Board in the past has paid deference.

We conclude that the reasons assigned by the Board for its action are inadequate to explain its departure from established standards on grounds other than extent of organization.[8]

Enforcement denied. The Board's order is set aside.

tile manufacturing company constituted an appropriate unit. Noting that the sorters or trappers worked in a department separated from the other departments of the plant, the Board stated that "even if, under other circumstances, the wool sorters or trappers would not constitute the most effective bargaining unit, nevertheless, in the existing circumstances, unless they are recognized as a separate unit, there will be no collective bargaining agent whatsoever for these workers." 27 N.L.R.B. at 690.

The Third Circuit enforced the Board's order in NLRB v. Botany Worsted Mills, 133 F.2d 876 (3d Cir. 1943), on the grounds that:

"The Board in its opinion approving this unit considered significant the extent of organization for collective bargaining among Botany's employees. * * * The Board expressed the belief that the rights of the unit selected as appropriate should not have to be contingent upon what other employees in other parts of the plant did. There was evidence indicating that the unit designated was sufficiently distinct from other groups of employees so as to make its selection as a separate unit feasible. The sorters or trappers work in a part of the plant entirely or partly set apart for the process in which they are engaged and this department has its own supervisors. There is no interchange of employees engaged in sorting or trapping, except to the extent that when the process was changed 12 former sort-

ers were transferred to other departments. We do not see any basis upon which the designation of the bargaining unit by the Board in this case should be interfered with by this court." Id. at 880–881.

Thus in both *Botany Worsted Mills* and the case now before us, the unit selected by the Board consisted of employees with a separate identity and function, under separate immediate supervision, with minimal interchange with other employees. In both cases no other union sought a broader unit.

8. While we have relied to some extent on Local 1325, Retail Clerks Int'l Ass'n, AFL–CIO v. NLRB, 134 U.S.App.D.C. 298, 414 F.2d 1194 (1969), we do not in this case decide whether to adopt the standard of judicial review of Board unit determinations favored by the District of Columbia Circuit, *see id.* at 1201; Food Store Employees Union, etc. v. NLRB, 135 U.S.App.D.C. 341, 418 F.2d 1177, 1182 n. 6 (1969), or the more stringent standard employed by the Third Circuit, *see* NLRB v. Western and Southern Life Ins. Co., 391 F.2d 119, 121–122 (3d Cir.), cert. denied, 393 U.S. 978, 89 S.Ct. 445, 21 L.Ed.2d 439 (1968); Metropolitan Life Ins. Co. v. NLRB, 328 F.2d 820, 829 (3d Cir.), vacated and remanded on other grounds, 380 U.S. 523, 85 S.Ct. 1325, 14 L.Ed.2d 265 (1965). Under either standard the Board's unit determination in this case must fall.