The **MAY DEPARTMENT STORES COM-PANY, Plaintiff-Appellant,**

v.

**NATIONAL LABOR RELATIONS BOARD, Defendant-Appellee.**

**No. 26790.**

United States Court of Appeals, Ninth Circuit.

Jan. 20, 1972.

Rehearing Denied March 20, 1972.

William M. Byrne, Sr., District Judge, dissented and filed opinion.

David A. Maddux, Los Angeles, Cal. (argued), George R. Richter, Jr., of Sheppard, Mullin, Richter & Hampton, Los Angeles, Cal., for appellant.

William F. Wachter (argued), Daniel M. Katz, Peter G. Nash, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Washington, D. C.; Ralph E. Kennedy, Reg. Director, NLRB; Brundage, Neyhart, Miller, Ross & Reich, Los Angeles, Cal., for appellee.

Harry L. Browne, Howard F. Sachs, Spencer, Fane, Britt & Browne, American Retail Federation, Kansas City, Mo., amicus curiae.

Before WRIGHT and TRASK, Circuit Judges, and BYRNE, District Judge.*

EUGENE A. WRIGHT, Circuit Judge:

This case is before us on petition to review and cross-application for enforcement of an order of the National Labor Relations Board. This court has jurisdiction under Section 10(e) and (f) of the National Labor Relations Act, 29 U. S.C. § 151, et seq.

The board ordered an election among the employees at a service facility owned by the May Company in Los Angeles. At issue is the appropriateness of the bargaining unit certified by the board. The board's order appears at 186 NLRB No. 17 (1970).

Because the board gave controlling weight in determining the bargaining unit to the extent of unionization, in violation of Section 9(c) (5) of the Act; and because the board failed to distinguish its decision in this case from its many inconsistent decisions in cases involving substantially identical fact situations, we grant the petition to set aside the order and deny the cross-application for enforcement.

May Department Stores (Mays) operates a chain of department stores in Southern California—one major store in downtown Los Angeles, seventeen branch stores in that part of the state, and a service facility three miles from the downtown store.

The service facility is the subject of these proceedings. It consists of five buildings making up one complex serving the retail stores. Goods are received, warehoused, and distributed. There are also processing activities in a variety of workrooms handling furniture, drapery, upholstery, carpeting, clothing alterations, etc. The workrooms are on several floors of the buildings comprising the facility, adjacent to merchandise storage and warehousing areas.

The board has certified a unit of "warehouse employees," essentially those personnel who check merchandise in and out and move it around the facility. Excluded are the workroom employees.

The history of attempts to unionize the service facility employees is brief. In May of 1967, Teamsters Local 986 filed a petition pursuant to Section 9(c) of the Act, seeking a board election among employees at the facility. The union did not contest Mays' position that the unit should include all workroom employees. The regional director ruled that the unit appropriate for collective bargaining was that contended for by Mays and sought by the union, even though the alterations workroom employees to be included were then located outside the facility. The alterations workroom was transferred to the facility in September of 1967.

The representation proceeding initiated by Teamsters Local 986 ultimately culminated in an election. The union failed to receive a majority of the valid ballots cast and the results of the election were certified.

In November 1969, Teamsters Local 196 filed a second amended petition for

* Honorable William M. Byrne, Sr., United States District Judge, for the Central District of California, sitting by designation.

election, seeking a bargaining unit to include warehouse employees but excluding the workroom employees. After a hearing, and over the protest of the company, the regional director certified the smaller unit now requested by the union.

An election was ordered in January 1970, for the unit as sought by the union and it received a majority of the valid ballots cast. The result of the election showed no overwhelming union sentiment even within the fragment unit, the union winning by the narrow margin of 72 to 65.

In order to secure judicial review, Mays refused to bargain with the union and the latter filed refusal to bargain charges. A complaint issued; Mays answered with an admission that it had refused to bargain, but pleaded affirmatively the inappropriateness of the bargaining unit. Upon motion of the General Counsel, summary judgment was granted and Mays held in violation for refusal to bargain with the union.

*I. Extent of Unionization.*

■ In determining the appropriateness of the bargaining unit, the board has broad discretion. Section 9(b) of the Act provides:

"The Board shall decide in each case whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed by this subchapter, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit or subdivision thereof."

This section has been interpreted to give the board wide latitude within its area of expertise. Packard Motor Car Co. v. N.L.R.B., 330 U.S. 485, 67 S.Ct. 789, 91 L.Ed. 1040 (1947); N.L.R.B. v. E-Z Davies Chevrolet, 395 F.2d 191 (9th Cir. 1968); N.L.R.B. v. Merner Lumber & Hardware Co., 345 F.2d 770 (9th Cir. 1965), cert. denied, 382 U.S. 942, 86 S. Ct. 397, 15 L.Ed.2d 352 (1965).

However, the board is limited by Section 9(c) (5) of the Act which provides:

"In determining whether a unit is appropriate for the purposes specified in subsection (b) of this section the extent to which the employees have organized shall not be controlling."

We noted in Westward-Ho Hotel Co. v. N.L.R.B., 437 F.2d 1110, 1112–1113 (9th Cir. 1971):

"[I]t is clear that Congress in passing this amendment intended to overrule Board decisions approving a unit that could only be supported on the basis of the extent of organization."

The legislative history of Section 9(c) (5) includes the following pertinent remarks:

"[The section] strikes at a practice of the Board by which it has set up as units appropriate for bargaining whatever group or groups the petitioning union has organized at the time. . . . While the Board may take into consideration the extent to which employees have organized, this evidence would have little weight, and, as [the section] provides, is not to be controlling. . . ." 1 Legislative History of the Labor Management Relations Act, 1947, page 328; House Report No. 245, 80th Congress, 1st Session, page 37.

■ We agree that the compelling inference from the record before us is that the board allowed the extent of unionization to control its decision. Although we do not contest the board's counsel's general proposition that more than one unit may be appropriate at any facility [*See* State Farm Mutual Automobile Insurance Co. v. N.L.R.B., 411 F. 2d 356 (7th Cir. 1969), cert. denied 396 U.S. 832, 90 S.Ct. 87, 24 L.Ed.2d 83 (1969)], we are not convinced that merely because the board, at the urging of the union, has made two conflicting determinations this shows conclusively that there are two appropriate units in one facility.

There was no significant change between 1967 and 1970 at the Mays service facility. In view of the fact that the union sought a facility-wide unit, lost the election, and then sought a frag-

mented unit, we feel that it is incumbent upon the board at the very least to confront the inconsistency between its two rulings and give adequate reasons why it finds two different appropriate units within the same facility. Counsel's after-the-fact attempts to explain the record are inadequate.

## II. Inconsistency With Other Board Decisions.

■ Of equal significance is the fact that the board's decision in the instant case was wholly inconsistent with its prior, and subsequent, decisions in cases involving retail department store service buildings under comparable facts. In May Department Stores Company d/b/a Famous Barr Company, 176 NLRB No. 14 (1969), the board held appropriate a bargaining unit which included all employees employed at the petitioner's St. Louis facility, including approximately 225 employees who performed traditional warehouse functions and approximately 90 who were employed in the furniture, carpet, appliance, and radio and television workrooms and in the fur storage vault.

In R. H. Macy Co., Inc., 180 NLRB No. 59 (1969), the board included employees working in the furniture, television and lawnmower repair workrooms in a unit of warehouse employees at the employer's service building in Atlanta. The board there said:

> "[I]t is clear that the service building is essentially a place where goods are received, stored, processed, and then shipped to the retail stores or directly to customers, and that the employees located there are engaged in such activities or closely related work. Though some of the work of the workshop employees is concerned with repairing goods after they have reached the customer, others of the workshop employees, like the warehouse employees, process goods before they are delivered. For example, employees in the furniture shop may repair damaged furniture before sale or shipment, and the rug workshop performs cutting and installation. Also, as in-

dicated, the Service Building Manager is the top supervisor for all service building workers, including those whom the Employer would exclude from the unit. The service building involves basically a single, separate operation, much like a single plant which is, under the Act, an inherently appropriate unit. In these circumstances, the fact that workshop employees are more skilled than warehousing employees no more suggests the inappropriateness of the building wide unit than does the fact that a plant may have employees of varying skills suggest the inappropriateness of a plantwide unit." (footnote omitted) 180 NLRB at p. 3 of slip opinion.

And in H. P. Wasson & Co., 153 NLRB No. 1499 (1969), the board included a rug cutter in a unit of employees performing traditional warehouse functions.

The decision of the board in the case before us is totally inconsistent with those which it made in *Famous Barr, Macy* and *Wasson*.

Subsequent inconsistent decisions include Sears, Roebuck & Co., 191 NLRB No. 84 (1971); Sears, Roebuck & Co., 191 NLRB No. 85 (1971); and Sears, Roebuck & Co., 182 NLRB No. 121 (1970).

In view of this total lack of consistency, we cannot enforce the board's order. N.L.R.B. v. Metropolitan Life Insurance Co., 380 U.S. 438, 85 S.Ct. 1061, 13 L. Ed.2d 951 (1965); Westward-Ho, *supra*, Carnation Company v. N.L.R.B., 429 F. 2d 1130 (9th Cir. 1970).

## III. Failure To Give Adequate Reasons For The Inconsistency.

Finally, the board did not even bother to give reasons why this departure from its earlier decision involving the same facility and from its many decisions in other comparable situations might be appropriate. Although the board has substantial discretion, it cannot arbitrarily make inconsistent decisions without setting forth rational reasons and guidelines. A careful reading of the "Decision and Direction of Election" of the regional director, affirmed by the

board, is conclusive of the proposition that the only attempted explanation of the departure from the holdings in the *Wasson, Famous Barr,* and *Macy* decisions is contained in one sentence:

"Thus, in each of these cases, the petitioner [union] sought a unit which included the workroom employees."

It is inescapable that the board was saying, in effect: In the *Wasson, Famous Barr* and *Macy* cases the petitioning unions wanted the workroom employees included in the bargaining unit, so the board included them; but in the instant case, the petitioning unit wanted the workroom employees excluded from the unit, so the board excluded them.

Giving the petitioning union precisely what it wants just because it asks for it is the same as giving controlling weight to the extent the union has organized a group of employees. We have already noted that this is prohibited by Section 9(c) (5) of the Act. Hence the one sentence statement of reasons by the board fails utterly to distinguish its other inconsistent decisions.

The board's decision and order give controlling weight in determining the bargaining unit to the extent of unionization, in violation of Section 9(c) (5) of the Act. The board's decision and order are arbitrary and unreasonable in that they are totally inconsistent with prior, and subsequent, decisions of the board. Hence the petition to set aside the order is granted and the cross-application to enforce the order is denied.

WILLIAM M. BYRNE, Sr., District Judge (dissenting):

I respectfully dissent.

Contrary to my Brothers, I do not deem it "incumbent" upon the Board to explain its approval of bargaining units different in scope at the same warehouse facility. As noted by the Fourth Circuit, "In many cases there is no 'right' unit. . . ." NLRB v. Quaker City Life Insurance Co., 319 F. 2d 690, 693 (4th Cir. 1963). Under such circumstances, the Board is not required by the Act "to choose the most appropriate unit, but only to choose an appropriate unit, within the range of several appropriate units in a given factual situation." State Farm Mutual Automobile Insurance Co. v. NLRB, 411 F. 2d 356, 358 (7th Cir. 1969), cert. denied, 396 U.S. 832, 90 S.Ct. 87, 24 L.Ed.2d 83 (1969). Accord, Gallenkamp Stores Co. v. NLRB, 402 F.2d 525 (9th Cir. 1968); NLRB v. Deutsch Co., 265 F.2d 473 (9th Cir. 1959), cert. denied, 361 U.S. 963, 80 S.Ct. 592, 4 L.Ed.2d 544 (1960). Here the Board was confronted by two unions, on separate occasions, seeking to represent different segments of the working population at May's warehouse facility. Local 986 petitioned for a comprehensive unit, thus leaving unresolved, until the petition two years later by Local 196, the appropriateness of alternative groupings. Merely because the Board sanctioned an overall bargaining unit at May's warehouse does not mean that such a unit is the only one which is appropriate. Indeed, that is the teaching of the three Board decisions relied upon by the majority to lend credence to the assertion of policy deviation. Actually, a close reading of these decisions reveals a "reaffirmation to" a long standing principle of labor law, rather than a "departure from" previous Board policy.

In H. P. Wasson & Co., 153 NLRB 1499 (1965), the Company owned four retail stores and two warehouses. The Union sought a bargaining unit composed of employees working at the two warehouses, including a rug cutter and clerical employees. Excluded from the Union's proposed unit were the following employees: truckdrivers, carpenters, painters, electricians and appliance repairmen who were "housed" at the two warehouses. The Company opposed this proposed unit, arguing that only one which included "all employees in the stores and warehouses" could be deemed "appropriate." Although the Board agreed that the Company's suggested unit was appropriate, it maintained that its duty under the act was to choose only an appropriate unit, not the *most* appropriate unit. Under the circumstances of that case, the Board was of the view

that the unit sought by the Union was proper:

"Accordingly, on the entire record, particularly the facts that the requested unit comprises all the Employer's separately located warehousing operations; that there is separate supervision and the lack of substantial interchange between the employees in the warehouse and those of other locations of the Employer; that there is no history of collective bargaining; and that no union requests a broader unit, we find . . . that a unit of employees in the two warehouses is appropriate." 153 NLRB at 1501.

Similarly, in The May Department Stores dba Famous Barr Co., 176 NLRB No. 14 (1969), the Board was again confronted with a union attempting to organize warehouse employees. There, the Union sought to represent all the employees at the Company's warehouse service facility save for office clerical employees, guards and supervisors. Over the Company's objection, the Board found these employees to have a sufficient community of interest to constitute an appropriate bargaining unit:

" . . . [I]t is well settled that there may be more than one way in which employees may be grouped for purposes of collective bargaining. (Footnote omitted). The fact that a given group of employees may have an identifiable community of interests separate and distinct from other employees of an employer does not mean that the various groups of employees do not also have a larger common community of interests. Indeed, Section 9(b) of the Act reflects this basic fact of industrial and mercantile life in establishing the presumptive appropriateness of an employer unit, craft unit, plant unit, or subdivision thereof. *Quite obviously, the fact that a subdivision of a plant may be appropriate does not preclude a finding that such employees may also appropriately be included in one of the larger enumerated units.* We therefore reject the Employer's contention that our

prior decisions preclude the establishment of the Facility-wide unit sought by the Petitioner." (Emphasis supplied).

Finally, in R. H. Macy Co., Inc., 180 NLRB No. 59 (1969) the Company opposed a unit of all warehouse employees, truckdrivers and garagemen at its service building on the ground that it was not limited to employees engaged in warehousing and delivery functions. The Board again rejected an attempt by an employer to supplant one appropriate unit with another: ". . . the fact that workshop employees are more skilled than warehousing employees no more suggests the inappropriateness of the building-wide unit than does the fact that a plant may have employees of varying skills suggest the inappropriateness of a plantwide unit." In sum, in these decisions, *the Board was not articulating policy guidelines establishing a proper warehouse bargaining unit,* but was merely seeking to determine whether the units in question were appropriate.

The instant factual situation is remarkably similar to the one presented the court in NLRB v. Morganton Full Fashioned Hosiery Co., 241 F.2d 913 (4th Cir. 1957). There, the United Textile Workers of America was decertified, pursuant to a Board election, as the bargaining representative of all the employers' production and maintenance workers. Two years later, in 1955, the American Federation of Hosiery Workers was elected and duly certified as the bargaining representative of the employers' knitters, knitter-trainees and helpers. The employers refused to bargain with this union, arguing that the limited scope of the bargaining unit represented Board approval of employee groupings to the extent of organization. Although the court condemned such a practice, it disagreed with the employers that it had been a controlling factor in the Board's determination:

"The American Federation of Hosiery Workers, which applied to the Board in 1955 to certify the knitters as a

separate bargaining unit, was not the same union which several years before had represented all the production employees and had been decertified in 1953; and it made no effort in 1955 to organize the entire body. . . . The record lacks the positive evidence, . . . that both the union and the Board chose the smaller bargaining unit only because organization of all production workers had failed." 241 F.2d at 916.

As was true in *Morganton,* the case before us is free of any "positive evidence" that the Board's approval of the less encompassing unit was solely attributable to the extent of Union organization. Indeed, the majority point out that within the so-called "fragmented unit," there was "no overwhelming union sentiment." Accordingly, the only "compelling inference from the record" that I can make is that Local 196, some 24 months after another brotherhood had been rejected as the bargaining representative of all the employees of the facility, petitioned the Board to represent a cohesive, but less inclusive, group of workers employed at May's warehouse.

I would enforce the Board's order.

Dyer, Circuit Judge, dissented from denial of petition for rehearing en banc and filed opinion in which Gewin, Bell, Coleman, Simpson and Roney, Circuit Judges, joined.